UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

AUG 1 2 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-512-GWU

ELLIS R. BOWLING,                                                    PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 CFR
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

Bowling

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)?  If yes, the claimant is disabled.  If no, proceed
        to Step 6.  See 20 CFR 404.1520(d), 404.1526(a), 416.920(d),
        416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?  If yes, the claimant was not
        disabled.  If no, proceed to Step 7.  See 20 CFR 404.1520(e),
        416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.   See 20 CFR 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.    Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Bowling

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Bowling

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Bowling

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Bowling

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.   Varley  v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ellis R. Bowling, was found by an Administrative Law Judge

(ALJ) to have "severe" impairments consisting of morbid obesity and being status

post diskectomy at L5-S1. (Tr. 17).  Nevertheless, based in part on the testimony

of a vocational expert (VE), the ALJ determined that Mr. Bowling retained the

residual functional capacity to perform a significant number of jobs existing in the

economy and, therefore, was not entitled to benefits.  (Tr. 17-22).  The Appeals

Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age, education, and work experience could perform any jobs if he were

limited to "light" level exertion, and also had the following non-exertional

impairments. (Tr. 52). He: (1) could stand or walk two hours in an eight-hour day,

and sit for six hours in an eight-hour day; (2) would require the option of sitting or

standing; (3) could not climb ladders, ropes, or scaffolds, crawl or kneel; (4) could

occasionally climb ramps or stairs, balance, crouch, or stoop; (5) had a limited ability to push and pull with the lower extremities; and (6) needed to avoid full body vibration, temperature extremes, hazardous heights, and dangerous machinery. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 53).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Bowling alleged disability primarily due to back problems, which resulted in associated hand and right leg numbness. (Tr. 90). While evidence was submitted of workups for a chest pain, all results were negative, including stress tests, and the ALJ did not find this to be a "severe" impairment. (Tr. 198-204, 359-66). The plaintiff does not challenge this conclusion on appeal.

Medical evidence in the transcript reflects that Mr. Bowling was evaluated by a neurosurgeon, Dr. Joseph Williams, for complaints of right arm, low back, and right leg pain beginning in August, 2002. (Tr. 228). Dr. Williams obtained an MRI of the cervical spine which was normal, but the lumbar MRI showed a herniated disc at the L5-S1 level, as well as degeneration/protrusion at L4-L5. (Tr. 227). Therefore, Dr. Williams performed an L5-S1 diskectomy in November, 2002. (Tr. 225-6). Mr.

8

Bowling was kept off work for the early part of 2003 for physical therapy, and, in view of the plaintiff's continued complaints of pain, a new MRI of the lumbar spine was obtained on March 13, 2003 which showed degenerative changes, scarring, and postoperative changes, but no definite nerve root compression. (Tr. 219, 229). Flexion and extension x-rays of the lumbar spine were normal. (Tr. 230). Dr. Williams noted that Mr. Bowling continued to complain of left and right shoulder pain, although the cervical spine MRI had been normal. (Tr. 219). He suggested an orthopedic evaluation of the shoulder problem, and epidural injections for the lumbar spine. (Tr. 219). No functional restrictions are given.

State agency physicians who reviewed the record at this point concluded that the plaintiff was capable of light level exertion, never climbing ladders, ropes, or scaffolds, and occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling. (Tr. 207-16). One of the reviewing sources also opined that the plaintiff should be restricted from extremes of cold, and vibration. (Tr. 318). These restrictions were consistent with the ALJ's hypothetical question. One of physicians, Dr. Kenneth Phillips, commented by way of rationale that while it was reasonable for the plaintiff to have work-related limitations, there was no evidence that work at a restricted level would be completely precluded. (Tr. 216).

There is no record that Dr. Williams, the treating neurosurgeon, saw the plaintiff after May, 2003. Beginning in August, 2003, Dr. John Gilbert, another

Bowling

neurosurgeon in the same medical group as Dr. Williams, saw Mr. Bowling in follow-up. No specific findings were listed in his office notes for August or October, 2003, although it was noted that the plaintiff declined the physician's recommendation of a caudal block. (Tr. 324-5). On November 9, 2003, Dr. Gilbert completed a physical residual functional capacity assessment stating that Mr. Bowling could lift a maximum of 20 pounds, and could lift 10 to 20 pounds frequently, but both standing/walking and sitting were limited to two hours each per eight-hour day, with less than 30 minutes between breaks. (Tr. 227-30). Dr. Gilbert also listed additional restrictions, such as never climbing, crouching, kneeling, or crawling, and only occasionally balancing, and added restrictions on work around heights, moving machinery, temperature extremes, chemicals, dust, noise, humidity, and vibration. (Id.). He added that the plaintiff was unable to concentrate due to an altered mental status from medication and chronic pain. (Tr. 329). His narcotic pain medication would alter his judgment and decision-making, according to Dr. Gilbert. (Id.).[1]

Dr. Timothy Kriss, another neurosurgeon, examined the plaintiff in November, 2003 in connection with a workers' compensation claim, and reviewed records from Dr. Williams and other sources, including various radiology reports. (Tr. 347). On examination, Dr. Kriss noted that Mr. Bowling had an antalgic gait and a limited

---

[1]However, the plaintiff denied any medication side effects at the administrative hearing. (Tr. 43).

10

range of motion due to pain, but reflex, motor, and sensory examinations were normal, and there was no muscle spasm, guarding, or atrophy. (Tr. 349). The physician also noted the presence of numerous Waddell signs, which indicated malingering. (Id.). In his opinion, the most recent lumbosacral spine MRI showed degenerative disc disease with small central protrusions at L4-L5 and L5-S1, and postoperative changes at L5-S1 with scarring around the nerve, but no nerve root compression. (Id.). The recent spinal x-rays showed no instability. (Tr. 350). Dr. Kriss opined that the MRI documented proper decompression of the left S1 nerve, without evidence of new structural problems or new nerve root compression. (Tr. 354). The plaintiff was neurologically intact, and Dr. Kriss did not believe that any permanent restrictions were justified based on the plaintiff's subjective complaints of pain, given what he felt were inconsistencies in the plaintiff's history. (Id.).

Dr. Gilbert's office notes reflect that he saw the plaintiff on two more occasions, and obtained another MRI of the lumbosacral spine in January, 2004, after Mr. Bowling complained of increased pain after a fall. (Tr. 356-7). The MRI showed some loss of lordosis in the mid upper and lumbar region, and "primarily perineural fibrosis" on the left side with minimal recurrent protrusion, and "very mild" relative bilateral neural foraminal encroachment secondary to disc degeneration. (Tr. 358).

Bowling

On appeal, the plaintiff argues that the ALJ erred in not accepting the opinion of Dr. Gilbert as a treating source. However, it appears that Dr. Gilbert had only seen the plaintiff on two occasions prior to completing his functional capacity assessment, and these office notes are virtually devoid of objective findings to support the physician's opinion. Dr. Kriss had access to the same objective evidence and provided detailed results of his physical examination. Under the circumstances, the ALJ could reasonably have relied upon the opinion of Dr. Kriss, rather than Dr. Gilbert. However, the ALJ appeared to give the plaintiff the benefit of the doubt, and did not accept Dr. Kriss's opinion that the plaintiff would have no permanent limitations. His functional capacity finding was consistent with the state agency reviewers who also had access to a large part of the evidence, and includes many of Dr. Gilbert's non-exertional restrictions.

The plaintiff also argues that his condition meets Section 1.04 of Commissioner's Listings of Impairment. While this listing does provide for a finding of disability for an individual with a herniated nucleus pulposus who can show certain additional factors, the objective evidence does not show that the plaintiff was able to show "evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and if there is involvement of lower back, positive straight leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2005). The

Bowling

records of Dr. Williams and Dr. Gilbert are silent on the issue of whether there was detectable sensory or reflex loss following the lumbar spine surgery, and office notes from both Dr. Kriss and another physician, Dr. Roy Varghese, who examined the plaintiff on July 8, 2003, indicate there were no neurological deficits and straight leg raising was negative. (TR 340, 349).  Therefore, the plaintiff clearly does not meet the Listing.

The decision will be affirmed.

This the ___/Z___ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13